**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF OKLAHOMA**

| | | |
|---|---|---|
| **SUMMER DENAE BROWNING,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No. 25-CV-234-GLJ** |
| | ) | |
| **FRANK J. BISIGNANO,** | ) | |
| **Commissioner of the Social** | ) | |
| **Security Administration,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## OPINION AND ORDER

Claimant Summer Denae Browning requests judicial review of a denial of benefits by the Commissioner of the Social Security Administration pursuant to 42 U.S.C. § 405(g). She appeals the Commissioner's decision and asserts that the Administrative Law Judge ("ALJ") erred in determining she was not disabled. For the reasons discussed below, the Commissioner's decision is hereby REVERSED AND REMANDED.

### Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment[.]" 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if h[er] physical or mental impairment or impairments are of such severity that [s]he is not only unable to do h[er] previous work but cannot, considering h[er] age, education, and work experience, engage in any other kind of substantial gainful work which

exists in the national economy[.]" 42 U.S.C. § 423(d)(2)(A). Social security regulations implement a five-step sequential process to evaluate a disability claim. *See* 20 C.F.R. §§ 404.1520, 416.920.[1]

Section 405(g) limits the scope of judicial review of the Commissioner's decision to two inquiries: whether the decision was supported by substantial evidence and whether the correct legal standards were applied. *See Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996). Substantial evidence is "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). *See also Clifton*, 79 F.3d at 1009. The Court may not reweigh the evidence or substitute its discretion for the Commissioner's. *See Casias v. Sec'y of Health & Hum. Servs.*, 933 F.2d 799, 800 (10th Cir. 1991). Instead, the Court must review the record as a whole, and "[t]he substantiality of the evidence must take into account

---

[1] Step one requires Claimant to establish that she is not engaged in substantial gainful activity. Step two requires Claimant to establish that she has a medically severe impairment (or combination of impairments) that significantly limits her ability to do basic work activities. If Claimant *is* engaged in substantial gainful activity, or her impairment *is not* medically severe, disability benefits are denied. If she *does* have a medically severe impairment, it is measured at step three against the listed impairments in 20 C.F.R. Part 404, Subpt. P, App. 1. If Claimant has a listed (or "medically equivalent") impairment, she is regarded as disabled and awarded benefits without further inquiry. Otherwise, the evaluation proceeds to step four, where Claimant must show that she lacks the residual functional capacity ("RFC") to return to her past relevant work. At step five, the burden shifts to the Commissioner to show that there is significant work in the national economy that Claimant *can* perform, given her age, education, work experience and RFC. Disability benefits are denied if Claimant can return to any of her past relevant work or if her RFC does not preclude alternative work. *See generally Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

whatever in the record fairly detracts from its weight." *Univ. Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951). S*ee also Casias*, 933 F.2d at 800-01.

**Claimant's Background**

Claimant was thirty-eight years old at the time of the administrative hearing. (Tr. 45, 187). She has a high school education and has past relevant work as a warehouse worker (Tr. 35). Claimant alleges an onset date of April 26, 2022, due to general anxiety disorder, social phobia, bipolar disorder, and cerebral cyst with neurological symptoms. (Tr. 208, 278).

**Procedural History**

On February 2, 2024, Claimant protectively applied for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401-434. (Tr. 187-93). On January 30, 2025, ALJ Deidre Dexter, held an administrative hearing and determined Claimant was not disabled on February 6, 2025. (Tr. 43-77). The Appeals Council denied review, making the ALJ's opinion the Commissioner's final decision for purposes of this appeal. (Tr. 1-6); *See* 20 C.F.R. §§ 404.971, 416.1481.

**Decision of the Administrative Law Judge**

The ALJ made her decision at step five of the sequential evaluation. (Tr. 33-34). At step two she determined that through the date last insured ("DLI") of September 30, 2023, Claimant had the severe impairments of degenerative disc disease, obesity, headaches, tinnitus, vertigo, bipolar disorder, depressive disorder, and anxiety disorder. (Tr. 19-20). She found at step three that Claimant did not meet any Listing. (Tr. 20-24). At step four she found Claimant had the residual functional capacity ("RFC") to perform the full range

of light work as defined in 20 C.F.R. §§ 404.1567(c) except Claimant is able to lift, carry, push, and pull up to 10 pounds frequently and 20 pounds occasionally, frequently reach, stoop, kneel, crouch, or crawl, but cannot climb or work near unprotected heights or moving mechanical parts of equipment tools or machinery, and can perform tasks that do not involve a specific production rate pace, such as assembly line work or an hourly production quota. (Tr. 25). Due to psychologically-based limitations, the ALJ found Claimant is able to understand, remember, and perform simple and detailed, but not complex, tasks, interact with supervisors as needed to receive work instructions, work in the same area as co-workers but cannot perform a job that involves teamwork to complete tasks, and can interact with the public if needed to refer a member of the public to a supervisor or co-worker for assistance but the job should not involve customer service or work where interacting with the public is an essential function of the job. (Tr. 26). The ALJ then concluded that although Claimant could not return to her past relevant work, she was nevertheless not disabled because there was work she could perform in the national economy, *i.e.*, collator operator, DICOT § 208.685-010, housekeeping cleaner, DICOT § 323.687-014, and marker, DICOT § 209.587-034. (Tr. 36).

**Review**

Claimant contends that the ALJ erred by failing to: (1) properly analyze the medical opinions of Heather Bradley, Ph.D., Debby Doughty, Ph.D., and William Farrell, Ph.D; (2) comply with Soc. Sec. R. 16-3p in finding Claimant's allegations of disability inconsistent with the evidence; (3) account for all of Claimant's impairments, particularly her ankle impairment, sleep apnea, fatigue, headaches, obesity, degenerative disk disease,

tinnitus, and vertigo; (4) support her physical RFC with substantial evidence; and (5) sustain her burden at step five by assigning jobs which conflict with the RFC. The Court finds merit in the first and second propositions.

The relevant medical evidence reveals that Claimant is an army veteran who established care with the Department of Veteran Affairs ("VA") medical center in Longview Texas on June 10, 2019. Physical examination at this time was unremarkable but for a notation of obesity and, pertinent here, a prior medical history including right ankle joint pain and two right ankle reconstruction surgeries performed in 2009 and 2013. (Tr. 1456-58, 2037, 2178). At a follow-up visit a year later, in June 2020, Claimant presented in a wheelchair and crutches with her right foot in a cam walker boot. X-rays revealed a right lateral malleolus fracture, and Claimant was advised to continue utilizing the boot. (Tr. 1346, 1350-51). In January 2022 Claimant returned to the clinic complaining of neck and back pain, and x-rays of Claimant lumbar spine were unremarkable but for "tiny endplate osteophytes at L3-4 and L4-5." (Tr. 454-55). Likewise, x-rays of Claimant's cervical spine indicated the spine was straightened but were otherwise unremarkable. (Tr. 455).

Claimant established care with Megan Smalley, M.D., in July 2022, indicating that she had not been utilizing her CPAP to treat her sleep apnea, and she did not want to continue CPAP therapy. (Tr. 1098-1100). That same month Claimant followed up with her primary care physician reporting chronic fatigue, beginning in 2016, and requested vitamin B12 injections. (Tr. 1088, 2172). Claimant's primary care physician noted Claimant's B12 was previously normal, and her fatigue may be premenstrual syndrome. (Tr. 1088-92). The

longitudinal record reflects Claimant was noted as suffering from insomnia and fatigue on various occasions. (Tr. 926, 1035, 1088, 1092, 1397, 1547, 1718, 2172).

Claimant visited her primary care physician, Joshua Obholz, M.D., in February 2023, complaining of recurring headaches, vertigo, and fatigue. (Tr. 922-26). Dr. Obholz noted Claimant had a prior MRI of her head in 2018 which showed a Type I Chiari malformation with no other significant abnormalities, and that Claimant's anxiety is a "big contributor" to her headaches. (Tr. 926). A March 2023 MRI of Claimant's head revealed a small right posterior fossa arachnoid cyst but was otherwise unremarkable. (Tr. 554).

On June 7, 2023, Claimant established care with Brian Willis, M.D. for a neurosurgery consult. (Tr. 861). Dr. Willis's found the March 2023 MRI revealed a small incidental arachnoid cyst, "likely asymptomatic but possibly a cause for her complaints of hearing deficits and vertigo." (Tr. 861). He opined the cyst exerted no compression on the cerebellum or brainstem, but there was a possibility of some compression of the 7th and 8th cranial nerves. (Tr. 861). Dr. Willis explained that the small cyst would be unlikely to produce her various symptoms, including her "non-specific headaches," insomnia, fatigue, and sleep apnea. (Tr. 861).

In April 2023, Claimant presented to the emergency department after rolling her ankle. (Tr. 1583). Claimant was assessed with a suspected ligament tear. (Tr. 1583, 1588). In October 2023, Claimant reported that three weeks prior she had undergone surgery on her right ankle and, since that time, had been wearing a brace and boot on her right ankle when she left her house. (Tr. 818).

Claimant sought an additional neurosurgery consult on August 15, 2023, and established care with Donald Schleicher II, D.O. (Tr. 3321). Dr. Schleicher referred Claimant to ENT, ordered cervical thoracic lumbar spine MRIs, and recommended she follow up in a month. (Tr. 3321). The MRIs revealed a disc bulge with annular fissure at L4-L5 and mild multilevel cervical degenerative disc disease. (Tr. 3335-36).

An otolaryngology consult conducted in September 2023, evaluating Claimant's vertigos and tinnitus, revealed negative Dix-Hallpike and head thrust tests and hearing within normal limits. (Tr. 829-835, 838-39). It was recommended claimant undergo a videonystagmography ("VNG") for further evaluation of vertigo in addition to further workup as to Claimant's headaches in light of vision changes and scalloping of the petrous portion of the temporal bone. (Tr. 835). The VNG was conducted in February 2024 and was unremarkable. (Tr. 1478-80).

As to Claimant's mental impairments, the record reflects Claimant routinely visited the VA to obtain mental health treatment for depression, anxiety, bipolar disorder, insomnia, and substance abuse. (Tr. 505-07, 816-28, 894-903, 959-65, 1151, 1388-1474, 3646). Claimant generally presented with good insight and judgment, (Tr. 962, 1116, 1149, 1278, 1306, 1334, 1378), and her symptoms were often described as mild to moderate acuity and did not warrant inpatient services. (Tr. 860, 964, 1085, 1117, 1151, 1307, 1335).

On January 6, 2023, state agency physician Patty Rowley, M.D., determined Claimant could perform the full range of medium work, and state agency psychologist Heather Bradley, Ph.D., determined Claimant could understand, remember, and carry out detailed but not complex instructions, make decisions, attend and concentrate for extended

periods, accept instructions, and respond appropriately to change in a routine work setting. (Tr. 84-86). Claimant filed a subsequent application for disability on February 2, 2024, and state agency physician Robert McGuffin, Jr., M.D., concluded there was insufficient evidence prior to Claimant's DLI to establish the severity of Claimant's allegations or disability and, on reconsideration, William Oehlert, M.D., concurred. (Tr. 92, 100). In connection with Claimant's second application, state agency psychological consultant, Debby Doughty, Ph.D., initially determined Claimant is able to understand, recall, and perform simple and detailed tasks, but not complex tasks, make occasional related judgments, focus for two-hour periods with routine breaks, pace and persist for 8 hour work day/40-hour work week but will have difficulty maintaining concentration for complex tasks and will experience some lapses on some tasks that require sustained attention. Dr. Doughty further found Claimant can interact with coworkers and supervisors to learn tasks and accept criticism but can only tolerate incidental/occasional public contact, and "is able to adapt to work setting and some changes in the work setting." (Tr. 95). State agency psychologist William Farrell, Ph.D., opined to the same limitations on reconsideration. (Tr. 103).

At the administrative hearing, Claimant testified, *inter alia*, that she first injured her right ankle in 2009 but reinjured it again in 2014, 2020, and 2023. (Tr. 58-59). The 2023 injury resulted in an ankle fracture that required surgery, and she utilized a boot and crutches. (Tr. 59). She further testified that she often needs help preparing meals, cleaning her home, and taking out her dogs. (Tr. 52). Claimant testified that she has difficulty driving due to anxiety, dizziness, vertigo, blackouts, and blurry vision. (Tr. 53). She is a combat

veteran who experiences PTSD, general anxiety, social anxiety, insomnia, and constant fatigue. (Tr. 59-60). Claimant further testified that her "main issue" is her mental health. (Tr. 59-60). The ALJ then elicited testimony from a vocational expert ("VE") to determine what jobs the claimant could perform given the RFC described above. (Tr. 62). The VE testified that such a claimant could perform the jobs of collator operator, DICOT § 208.685-010, housekeeping cleaner, DICOT § 323.687-010, and marker, DICOT § 209.587-034. (Tr. 70-71). The VE testified that the DOT does not "spell out production-rate pace or hourly quota[s]" and does not address an individual's ability to concentrate, persist and pace, the frequency of contact with others, or the frequency of changes in the work environment but, to the extent the jobs selected intersect with these limitations, it was based on the VE's professional experience. (Tr. 70, 72). The ALJ then offered a modified hypothetical where the individual would also be absent, on average, two days a month. (Tr. 72). The VE testified such a claimant would have difficulty maintaining employment.

In her written opinion at step four, the ALJ summarized much of Claimant's hearing testimony and the medical evidence of record. (Tr. 26-35). She then found Claimant's statements about the intensity, persistence, and limiting effects of Claimant's symptoms were not entirely consistent with the treatment records. (Tr. 34). The ALJ found the opinion of state agency medical consultant Dr. Rowley partially persuasive as it was supported by Dr. Rowley's review of the evidence and consistent with the longitudinal record; however, the ALJ found additional postural and environmental limitations warranted. (Tr. 33). She then found the opinions of Drs. McGuffin and Oehlert unpersuasive as they were inconsistent with the evidence of record, and the opinions of state agency psychologists,

Drs. Bradley, Doughty, and Farrell, persuasive, noting they were generally consistent with the longitudinal record. (Tr. 32-34).

**I. Medical Opinions of Drs. Bradley, Doughty, and Farrell**

Claimant first argues, generally, the ALJ erred in evaluating the medical opinions of Drs. Bradley, Doughty, and Farrell by evaluating the opinions as if they were identical and failing to address the factors outlined in 20 C.F.R. § 404.1520c(3-5). Relatedly, Claimant also argues here that the ALJ failed to comply with Soc. Sec. R. 96-8p, by failing to explain why, having found the opinions of Drs. Doughty and Farrell persuasive, she did not include any limitations on Claimant's ability to make judgments and adapt to changes in the work setting when both opinions limited Claimant to occasional judgments and "some" changes in the work setting.

For claims filed on or after March 27, 2017, medical opinions are evaluated pursuant to 20 C.F.R. §§ 404.1520c and 416.920c. Under these rules, the ALJ does not "defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s)[.]" 20 C.F.R. §§ 404.1520c(a), 416.920c(c). Instead, the ALJ evaluates the persuasiveness of all medical opinions and prior administrative medical findings by considering a list of factors. *See* 20 C.F.R. §§ 404.1520c(b), 416.920c(b). The factors are: (i) supportability, (ii) consistency, (iii) relationship with the claimant (including length of treatment relationship, frequency of examinations, purpose and extent of treatment relationship, and examining relationship), (iv) specialization, and (v) other factors that tend to support or contradict a medical opinion or prior administrative finding including, but not limited to, "evidence showing a medical source has familiarity with the other evidence in

the claim or an understanding of our disability program's policies and evidentiary requirements." 20 C.F.R. §§ 404.1520c(c), 416.920c(c). Supportability and consistency are the most important factors in evaluating the persuasiveness of a medical opinion and the ALJ must explain how both factors were considered, although the ALJ is generally not required to explain how the other factors were considered. *See* 20 C.F.R. 404.1520c(b)(2), 416.920c(b)(2). However, when the ALJ finds that two or more medical opinions or prior administrative findings on the same issue are equally well-supported and consistent with the record but are not exactly the same, the ALJ must explain how "the other most persuasive factors in paragraphs (c)(3) and (c)(5)" were considered. 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(3). The supportability factor examines how well a medical source supported their own opinion with "objective medical evidence and supporting explanations." 20 C.F.R. §§ 404.1520c(c)(2), 416.920c(C)(2).

Here, the ALJ concluded the opinions of Drs. Bradley, Doughty, and Farrell were all "generally persuasive." In considering the consistency of the three opinions the ALJ discussed the individual findings of all three opinions. (Tr. 33) Then, in assessing the consistency of the three opinions, the ALJ reasoned:

> [t]he opinions of the State Agency psychologists [are] generally consistent with other evidence in the file. The claimant was prescribed medication to treat symptoms of depression and anxiety. . . . [C]laimant's mental health symptoms were mild to moderate in acuity. The claimant was typically described as alert and oriented, cooperative, and calm. Her thought process was organized, her attention symptoms resolved with medication, and later, her attention and concentration were noted to be normal.

(Tr. 34) (internal citations omitted). Claimant's argument here focuses on the fact that the ALJ found all three opinions "generally persuasive." However, "the level of persuasiveness

is not what triggers the additional duty to explain and consider the other factors. Instead, the duty is triggered when the ALJ finds two or more opinions **on the same** issue as equally well-supported and consistent with the record." *L.S. v. Bisignano*, 2025 WL 2487348, at *5 (W.D. Okla. Aug. 28, 2025); *Rachel M. W. v. O'Malley*, 2024 WL 1008566, at * 7 (N.D. Okla. Mar. 8, 2024) ("However, as argued by Defendant, and this Court agrees, the ALJ's mere use of the same 'descriptor' regarding the persuasiveness of certain opinions 'does not render them equally persuasive.'"). Here, Dr. Bradley found "[t]he Claimant is maximally able to understand, remember and carryout detailed but not complex instructions, make decisions, and attend and concentrate for extended periods. Claimant can accept instructions and respond appropriately to routine changes in a routine work setting." (Tr. 86). However, Drs. Doughty and Farrell opined, verbatim, to the following limitations:

> [Claimant] is able to understand, recall, and perform simple and detailed tasks, but not complex tasks, and *make occasional related judgments.* Clmt is able to focus for two-hour periods with routine breaks, and pace and persist for [an] 8 hour work day and 40 hour work week despite psychological symptoms. *Due to periodic uncontrolled psychological symptoms, the Clmt will have difficulty maintaining concentration for complex tasks and will experience some lapses on tasks that require sustained attention. Clmt is able to interact with coworkers and supervisors to learn tasks and accept criticism but can only tolerate incidental/occasional public contact. Clmt is able to adapt to work setting and some changes in the work setting.*

(Tr. 95, 103) (emphasis added). Unlike Drs. Doughty and Farrell, Dr. Bradley found, by omission, no limitations on Claimant's ability to (i) make judgments, (ii) concentrate for complex tasks, (iii) complete tasks that require sustained attention without lapses, (iv) interact with coworkers, supervisors, and the public, (v) or her ability to adapt to a

work setting and changes in the work setting. (Tr. 83, 95, 103). In this regard, given the RFC assessed by the ALJ, it appears that the ALJ adopted parts of Drs. Bradley, Doughty, and Farrell's opinions, without addressing the discrepancies or factors that led her to believe one was more persuasive than the others.

Although the ALJ summarized the opinions of Drs. Bradley, Doughty, and Farrell, she did not explain the most persuasive factors outside of the supportability and consistency factors nor did she resolve the inconsistencies in these opinions or explain why she chose to adopt or reject certain parts of each opinion. Particularly here, the ALJ adopted most of Drs. Doughty's and Farrell's opinions but appears to have declined to adopt these opinions to the extent they opined Claimant could make only occasional judgments, would have difficulty maintaining concentration for complex tasks, experience lapses on tasks that require sustained attention, and adapt only to some changes in the work setting. (Tr. 25). The ALJ's opinion contains no explanation as to how she resolved the material inconsistencies between these opinions and, in the absence of such an explanation, it appears the ALJ found the medical opinions equally well-supported on the same issues but failed to explain how "the other most persuasive factors in paragraphs (c)(3) through (c)(5)" were considered, or how the ALJ reconciled these conflicting opinions to reached the assigned RFC. 20 C.F.R. §§ 404.1520c(b)(3), 416.920c(b)(3). *Leep v. Kijakazi*, 2022 WL 879567, at * 4 (E.D. Okla. Mar. 8, 2022) ("In this case, although the ALJ thoroughly summarized the reviewing opinions and Dr. Paris' consultative opinion, in addition to addressing the persuasiveness, supportability, and consistency of each, she neither explained the most persuasive factors . . . nor resolved the inconsistencies in the opinions.

Specifically, in relation to the reviewing opinions of Dr. Holloway and Dr. Gunter, the ALJ found each 'generally persuasive' under the same reasoning but did not delineate why she preferred parts of one opinion over the other. This was error because the ALJ must explain how she resolved the material inconsistencies[.]"); *Ranel C. v. O'Malley*, 2024 WL 942370, at *3 (N.D. Okla. Mar. 5, 2024) ("[T]he ALJ offered no distinction between the consistency and supportability of Drs. Halloway and Gallavan's findings, apparently judging them 'both equally well supported . . . and consistent with the record . . . .' Yet these opinions were 'not exactly the same,' including in how they evaluated Plaintiff's ability to perform asks and interact with the public. The ALJ neither acknowledged these difference nor considered the additional factors outlined in 20 C.F.R. § 404.1520c(c). . . . The ALJ must have preferred Dr. Gallavan's finding on this issue over Dr. Holloways[.] . . . But the ALJ offered no articulation as to why he credited Dr. Gallavan, despite finding Dr. Holloway's opinion equally supported and consistent with the record. This was a violation of the articulation requirements of § 404.1520c(b)(3).").

## II. Subjective Statements

Claimant also maintains the ALJ committed reversible error in analyzing her subjective statements by relying "solely on the objective medical evidence." The Court agrees.

The Commissioner uses a two-step process to evaluate a claimant's subjective statements of pain or other symptoms:

> First, we must consider whether there is an underlying medically determinable physical or mental impairment(s) that could reasonably be expected to produce an individual's symptoms, such as pain. Second ... we

> evaluate the intensity and persistence of those symptoms to determine the extent to which the symptoms limit an individual's ability to perform work-related activities . . .

Soc. Sec. Rul. 16-3p, 2017 WL 5180304, at *3 (October 25, 2017).[2] Tenth Circuit precedent is in alignment with the Commissioner's regulations but characterizes the evaluation as a three-part test. *See e. g., Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1166-67 (10th Cir. 2012) (citing *Luna v. Bowen*, 834 F.2d 161, 163-64 (10th Cir. 1987)).[3] As part of the symptom analysis, the ALJ should consider the factors set forth in 20 C.F.R. §§ 404.1529(c)(3) & 416.929(c)(3), including: (i) daily activities; (ii) the location, duration, frequency, and intensity of pain or other symptoms; (iii) precipitating and aggravating factors; (iv) the type, dosage, effectiveness, and side effects of any medication the individual takes or has taken; (v) treatment for pain relief aside from medication; (vi) any other measures the claimant uses or has used to relieve pain or other symptoms; and (vii) any other factors concerning functional limitations. *See* Soc. Sec. Rul. 16-3p, 2017 WL 5180304, at *7-8. An ALJ's symptom evaluation is entitled deference unless the Court finds that the ALJ misread the medical evidence as a whole. *See Casias*, 933 F.2d at 801. An ALJ's findings regarding a claimant's symptoms "should be closely and

---

[2] SSR 16-3p is applicable for decisions on or after March 28, 2016, and superseded SSR 96-7p, 1996 WL 374186 (July 2, 1996). *See* SSR 16-3p, 2017 WL 5180304, at *1. SSR 16-3p eliminated the use of the term "credibility" to clarify that subjective symptom evaluation is not an examination of [a claimant's] character." *Id.* at *2.

[3] Analyses under SSR 16-3p and *Luna* are substantially similar and require the ALJ to consider the degree to which a claimant's subjective symptoms are consistent with the evidence. *See, e.g., Paulek v. Colvin*, 662 Fed. Appx. 588, 593-94 (10th Cir. 2016) (finding SSR 16-3p "comports" with *Luna)* and *Brownrigg v. Berryhill*, 688 Fed. Appx. 542, 545-46 (10th Cir. 2017) (finding the factors to consider in evaluating intensity, persistence, and limiting effects of a claimant's symptoms in 16-3p are similar to those set forth in *Luna*).

affirmatively linked to substantial evidence and not just a conclusion in the guise of findings." *Kepler v. Chater*, 68 F.3d 387, 391 (10th Cir. 1995) (quotation omitted). The ALJ is not required to perform a "formalistic factor-by-factor recitation of the evidence[,]" *Qualls v. Apfel*, 206 F.3d 1368, 1372 (10th Cir. 2000), but simply "recit[ing] the factors" is insufficient. *See* Soc. Sec. Rul. 16–3p, 2017 WL 5180304 at *10. Under 20 C.F.R. § 404.1529, and as restated in Soc. Sec. R. 16-3p, "we will not disregard an individual's statements about the intensity, persistence, and limiting effects of symptoms solely because the objective medical evidence does not substantiate the degree of impairment-related symptoms alleged by the individual." 2017 WL 5180304, at *5.

Although the ALJ extensively discussed much of the evidence of record and reiterates Claimant's hearing testimony about daily activities, medication, and treatment, her analysis is not "closely and affirmatively linked to substantial evidence" but is a "conclusion in the guise of findings." *Kepler*, 68 F.3d at 391. Indeed, despite acknowledging Soc. Sec. R. 16-3p, it appears the ALJ concluded Claimant's subjective statements were inconsistent based solely on the objective medical evidence as she concluded "[t]he claimant alleges that her mental and physical limitations preclude her from sustaining regular and continuous work, even at the range of unskilled, light exertion. However, the nature, scope and findings from the longitudinal treatment records [d]o not support the intensity or persistence of her subjective allegations." (Tr. 34). The ALJ then engages in no analysis or explanation of how, if at all, she considered the factors set forth in 20 C.F.R. §§ 404.1529(c)(3) & 416.929(c)(3). The Court is mindful that this "determination [is] peculiarly the province of the finder of fact" and it may not "upset such

determinations when supported by substantial evidence" *Id.* But the Court "cannot ascertain whether substantial evidence supports the ALJ's . . . determination here because [her] analysis was incomplete." *Brownrigg*, 688 Fed. Appx at 546. In sum, the ALJ did not sufficiently articulate her reasoning for discounting Claimant's subjective statements, and remand is necessary for her to conduct a proper analysis and to explain her reasons for discounting Claimant's allegations. *Hardman v. Barnhart*, 362 F.3d 676, 79-80 (10th Cir. 2004) (rejecting ALJ's pain analysis as boilerplate, with no attempt to link factors to evidence where the claimant persistently complained of pain and sought treatment.).

**III. Claimant's Impairments**

Claimant next argues the ALJ erred by failing to account for Claimant's right ankle impairment, obstructive sleep apnea, obesity, tinnitus, degenerative disc disease, headaches, and vertigo. To the extent Claimant argues the ALJ erred by failing to categorize her right ankle impairment or fatigue as medically determinable severe impairments, any failure to find Claimant's additional impairments at step two is considered harmless error because the ALJ is nevertheless required to consider the effect of these impairments and account for them in formulating Claimant's RFC at step four. *See, e.g.*, *Carpenter v. Astrue*, 537 F.3d 1264, 1266 (10th Cir. 2008) ("At step two, the ALJ must 'consider the combined effect of all of [the claimant's] impairments without regard to whether any such impairment, if considered separately, would be of sufficient severity [to survive step two.] Nevertheless, any error here became harmless when the ALJ reached the proper conclusion that Mrs. Carpenter could not be denied benefits conclusively at step two and proceeded to the next step of the evaluation sequence.") ("quoting *Langley v.*

*Barnhart*, 373 F.3d 1116, 1123-24 (10th Cir. 2004) and 20 C.F.R. § 404.1523.) *See also Hill v. Astrue*, 289 Fed. Appx. 289, 292 (10th Cir. 2008). ("Once the ALJ finds that the claimant has *any* severe impairment, he has satisfied the analysis for purposes of step two. His failure to find that additional alleged impairments are also severe is not in itself cause for reversal. But this does not mean the omitted impairment simply disappears from the analysis. In determining the claimant's RFC, the ALJ is required to consider the effect of *all* of the claimant's medically determinable impairments, both those he deems 'severe' and those 'not severe.'") (emphasis in original).

"The ALJ is not required to recite everything in the evidence; rather, the ALJ must discuss the relevant evidence that demonstrates [Claimant's] ability to work and 'significantly' probative evidence to the contrary." *Smith v. Berryhill*, 2018 WL 1535482, at *9 (N.D. Okla. Mar. 29, 2018) (citing Soc. Sec. R. 96-8p). The Court finds the ALJ sufficiently discussed the evidence of record as it pertains to the aforementioned impairments.

Here, the record reflects the ALJ considered Claimant's right ankle impairment, obstructive sleep apnea, insomnia, fatigue, obesity, headaches, tinnitus, degenerative disc disease, and vertigo. In the context of these impairments the ALJ acknowledged, *inter alia*, (i) the VA assessed Claimant as 100% service-connected disabled, in part, due to limited motion of the ankle, sleep apnea, vertigo, and tinnitus, (ii) Claimant's October 2023 healthcare visit where Claimant indicated she had recently had surgery on her right ankle and wore a brace and boot, (iii) the January 2022 x-rays of Claimant's lumbar and cervical spine which were unremarkable, (iv) Claimant's February 27, 2023 visit with Dr. Obholz

where Claimant endorsed headaches and vertigo, and Dr. Obholz opined Claimant's anxiety contributed to her headaches, (v) the March 2023 MRI which was indicative of a small arachnoid cyst, (vi) the June 2023 visit with Dr. Willis where Claimant reported headaches, chronic fatigue, insomnia/sleep apnea, vertigo, dizziness, and hearing difficulties, and Dr. Willis indicated the cyst would be unlikely to produce all of Claimant's symptoms, (vii) the December 2023 cervical and lumbar MRIs, (viii) Claimant's September 2023 vertigo evaluation, and (ix) Claimant's unremarkable VNG test on February 16, 2024.[4] (Tr. 21, 26-31).

Additionally, as it pertains to Claimant's obesity, Soc. Sec. R. 19-2p requires an ALJ to consider "[t]he combined effects of obesity with another impairment(s) may be greater than the effects of each of the impairments considered separately." Soc. Sec. R. 19-2p, 2019 WL 2374244, *4 (May 20, 2019). "Obesity in combination with another impairment may or may not increase the severity or functional limitations of the other impairment(s)". *Id.* at *2. At step two, the ALJ concluded Claimant's obesity was a severe medically determinable impairment. (Tr. 20). At step three the ALJ found Claimant's "obesity is not such as to prevent ambulation, reaching or postural maneuvers. It does, though, in combination with her other impairments, somewhat reduce the claimant's ability to stand, walk lift, and carry. A reduction in capacity to work at the light exertional range with some further residual functional capacity is therefore warranted." (Tr. 22). The Court therefore finds the ALJ did not err in evaluating Claimant's obesity given that these

---

[4] The ALJ also discussed Claimant's tinnitus and degenerative disc disease at step three. (Tr. 21).

limitations are reflected in the assigned RFC. *See Archie D. F. v. Saul*, 2021 WL 1348264, at *9 (N.D. Okla. Apr. 12, 2021) (finding no error in evaluating obesity where "the ALJ considered 'the entire record,' including Plaintiff's obesity," and relied on a medical source opinion "which noted Plaintiff's obesity and instances of elevated BMI" as support for the RFC assessment.").

The ALJ also adequately assessed and considered Claimant's headache. Soc. Sec. R. 19-4p "sets out the criteria for determining whether headaches are a primary disorder that constitute[] a medically determinable impairment ("MDI"), or whether the headaches are secondary to a separate MDI." *Melissa H. v. Kijakazi*, 2022 WL 4381158, at *2 (D. Utah Sept. 22, 2022). Indeed, the ALJ found Claimant had not been assessed with a primary headache disorder and, specifically, noted Dr. Obholz impression that Claimant's anxiety contributed to her headaches, Dr. Willis' finding that Claimant's headaches were non-specific, and that Claimant did not describe aura symptoms and indicated she took ibuprofen for her headaches, although this did not consistently provide relief. (Tr. 21). The Court finds no error here.

Although the ALJ did not discuss *all* of the evidence of record, such as Claimant's remote right ankle reconstruction surgeries, or every notation that Claimant experienced fatigue, it is clear she considered all of these impairments, and Claimant has not pointed to any evidence indicative of further limitations. Indeed, Dr. Rowley considered Claimant's ankle impairment and June 2020 fracture, and opined Claimant retained the capability to perform medium work. (Tr. 85-86). The ALJ found this opinion partially persuasive but ultimately tempered it in favor of Claimant, finding Claimant could perform light work

with additional postural and environmental limitations. (Tr. 33). In sum, the court finds the ALJ adequately considered all the impairments.

**IV. Substantial Evidence**

Claimant next argues the ALJ's physical RFC is not supported by substantial evidence because she found the opinion of Dr. Rowley only partially persuasive. The Court disagrees.

"A medical opinion is not required for the RFC determination, [but] '[i]n cases in which the medical opinions appear to conflict with the ALJ's decision regarding the extent of plaintiff's impairments to the point of posing a serious challenge to the ALJ's RFC assessment it may be inappropriate for the ALJ to reach an RFC determination without medical assistance.'" *J.Z. v. Kijakazi*, 2022 WL 859765, at *6 (D. Kan. Mar. 23, 2022) (quoting *Pedraza v. Berryhill*, 2018 WL 6436093, at *4 (D. Kan. Dec. 7, 2018); *Wells v. Colvin*, 727 F.3d 1061, 1072 (10th Cir. 2013). Ultimately, it is "the ALJ's responsibility, not a physician's, to assess a claimant's RFC from the medical record." *Berumen v. Colvin*, 640 Fed. Appx 763, 766 (10th Cir. 2016). Here, there is not a medical opinion in the record that contradicts the ALJ's physical RFC determination. Rather, Dr. Rowley opined Claimant could perform medium work, and the ALJ found this opinion partially persuasive, concluding that additional limitations were necessary in light of the medical evidence of record. It was not error for the ALJ to form an RFC based on the medical evidence of record without a medical source opinion opining to the precise limitations she found. *See Troutman v. Kijakazi*, 2022 WL 2960134, at *4-5 (W.D. Okla. July 26, 2022) (finding the ALJ did not "play doctor" when the ALJ proffered an adequate explanation for rejecting

the medical opinion and determined the plaintiff's RFC based on the evidence of record); *Chapo v. Astrue*, 682 F.3d 1285 (10th Cir. 2012) (finding an ALJ does not commit reversible error by tempering a medical opinion for the Claimant's benefit).

**V. Soc. Sec. R. 96-8p**

Claimant next argues the ALJ failed to comply with Soc. Sec. R. 96-8p by finding, at step three, Claimant had moderate limitations in understanding, remembering, or applying information, in adapting or managing oneself, and in maintaining concentration, persistence, or pace, and not explaining why these limitations did not result in additional limitations as Drs. Bradley, Doughty, and Farrell opined Claimant had only mild limitations in these areas.

"The RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations)." Soc Sec. R. 96-8p, 1996 WL 374184, at *7 (July 2, 1996). "When the ALJ has failed to comply with SSR 96-8p because [s]he has not linked h[er] RFC determination with specific evidence in the record, the court cannot adequately assess whether relevant evidence supports the ALJ's RFC determination." *Jagodzinski v. Colvin*, 2013 WL 4849101, at *2 (D. Kan. Sept. 11, 2013) (citing *Brown v. Comm'r of the Soc. Sec. Admin.*, 245 F. Supp. 2d 1175, 1187 (D. Kan. 2003).

The ALJ assessed the "paragraph B" criteria and determined Claimant had moderate limitations in understanding, remembering, or applying information, in adapting or managing oneself, and in maintaining concentration, persistence, or pace. (Tr. 21-25).

However, the fact that the ALJ found limitations in the B criteria "does not necessarily translate to a work-related functional limitation for purposes of the RFC assessment." *Vigil v. Colvin*, 805 F.3d 1199, 1203 (10th Cir. 2015). Likewise, "an ALJ 'can account for moderate limitations by limiting the claimant to particular kinds of work activity.'" *Lager v. Comm'r of Soc. Sec. Admin.*, 2023 WL 6307490, at *2 (10th Cir. Sept. 28, 2023) (unpublished) (quoting *Smith v. Colvin*, 821 F.3d 1264, 1269 (10th Cir. 2016)). Thus, despite Claimant's argument to the contrary, the ALJ's finding that Claimant had moderate limitations in several B criteria, does not mandate any particular RFC. Nonetheless, because this matter is being remanded for the ALJ's failure to properly assess the opinions of Drs. Bradley, Doughty, and Farrell, and the ALJ's mental RFC relies on these opinions, the ALJ is encouraged to provide a more detailed narrative discussion describing how the evidence supports her conclusions in this respect. *See* Soc Sec. R. 96-8p, 1996 WL 374184, at *7.

**VI. VE's Testimony**

Lastly, the Claimant asserts the VE's testimony and assigned jobs are not consistent with the DOT. Particularly she maintains: (i) the job of housekeeping cleaner, DICOT § 323.687-014, is inconsistent with Claimant's RFC limiting her to jobs where interacting with customers is an essential function of the job, (ii) the job of marker, DICOT § 209.587-034, conflicts with the RFC precluding work that involves specific production rate pace, such as assembly line work or an hourly production quota, and (iii) the job of collator operator, DICOT § 208.685-010, conflicts with the Claimant's limitation to work that is not near moving mechanical parts of equipment, tools, or machinery.

Under Soc. Sec. R. 00-4p, "[w]hen vocation evidence provided by a VE or VS is not consistent with information in the DOT, the [ALJ] must resolve this conflict before relying on the VE or VS evidence to support a determination or decision that the individual is or is not disabled. The [ALJ] will explain in the determination or decision how she resolved the conflict. Soc. Sec. R. 00-4p, 2000 WL 1898704, at *4 (Dec. 4, 2000). But, effective January 6, 2025, Soc. Sec. R. 00-4p was rescinded and replaced with Soc. Sec. R. 24-3p. Soc. Sec. R. 24-3p, 2024 WL 498840, at * 97159 (Dec. 6, 2024). For decisions decided after January 6, 2025, such as this one, Soc. Sec. R. 24-3p ameliorates the ALJ's duty "to identify and resolve conflicts between occupational information provided by [vocational specialists] and VEs and information in the DOT."[5] *Id.* Instead, "when the claimant is represented, we expect the representative to raise any relevant questions or challenges about the VE's testimony at the time of the hearing and to assist in developing the record through appropriate questions to the VE." *Id.* Claimant's representative did not raise questions or challenges as it pertains to these jobs. Regardless, it is the Commissioner's burden at step five to show that there is significant work in the national economy that Claimant *can* perform. *See generally Williams*, 844 F.2d at 750-51.

[5] "We will use [Soc. Sec. R. 24-3p] beginning on its applicable date. We will apply this SSR to new applications filed on or after the applicable date of the SSR and to claims that are pending on or after the applicable date. This means that we will use this SSR on and after its applicable date in any case in which we make a determination or decision. We expect that Federal courts will review our final decisions using the rules that were in effect at the time we issued the decisions. If a court reverses our final decision and remands a case for further administrative proceedings after the applicable date of this SSR, we will apply this SSR to the entire period at issue in the decision we make after the court's remand." Soc. Sec. R. 24-3p, at *97161, n. 1.

First, Claimant argues the job of housekeeper, DICOT § 323.687-014, conflicts with her limitation to a job that does "not involve customer service or other work where interacting with the public is an essential function of the job." (Tr. 25). The job description for housekeeper/cleaner describes no contact with the public beyond "render[ing] personal assistance to patrons." DICOT 323.687-014, 1991 WL 672783, at *1. The DOT description reflects that the job is solitary in nature, with little social interaction required as the "people" rating is an 8 on a scale of 0-8, with 8 being the "lowest possible level of human interaction that exists in the labor force." *Lane v. Colvin*, 643 Fed. Appx. 766, 770 n. 1 (10th Cir. 2016) (unpublished). Although a limitation to no contact with the general public may be at odds with the job of housekeeper, *Rogers v. Comm'r of Soc. Sec. Admin.*, 2019 WL 4750233, at *3 (E.D. Okla. Sept. 30, 2019), here the ALJ found Claimant is limited to jobs that do not involve customer service and jobs where "interacting with the public is not an essential function of the job." (Tr. 25). The DOT reflects that the job of housekeeper is not one where "interacting with the public is an essential function of the job" and, thus, the Court finds no conflict here as the RFC assessed is different from those which limit a claimant to no contact with the general public. *See Bishop v. Saul*, 2021 WL 1630548, at *3, 5 (W.D. Okla. Apr. 27, 2021) ("The DICOT job description for housekeeper/cleaner mentions no contact with the general public beyond 'render[ing] personal assistance to patrons.' . . . As the Commissioner points out, the housekeeper might exchange pleasantries with a guest, so the personal assistance to patrons is in the context of cleaning rooms and halls and restocking rooms. . . . And both of the jobs the vocational expert identified are unskilled. This means they involve primarily working with objects or things, not people.")

(citing 20 C.F.R. pt. 404, sbpt. P. App. 2 § 2029g) ("[T]he primary work functions in most unskilled occupations relate to working with things (rather than data or people)."); *Burns v. O'Malley*, 2024 WL 4299022, at *5 (E.D. Okla. Sept. 26, 2024) (finding the job of housekeeper cleaner, DICOT § 323.687-014, did not conflict with an RFC indicating the claimant "will do best in a well-spaced work setting with his own work area or where he can frequently work alone.").

Likewise, the Court finds Claimant fails to demonstrate a conflict between the assigned job of collator operator and an RFC requiring Claimant to avoid moving mechanical parts of equipment, tools, or machinery. The DOT explicitly provides that the occupation of collator operator does not involve moving mechanical parts. DICOT § 208.685-010, 1991 WL 671753 ("Moving Mech. Parts: Not Present – Activity or condition does not exist."); *Skinner v. Bisignano*, 2026 WL 146539 (M.D. Pa. Jan 20, 2026) ("[I]t is not necessary to look to narrative descriptions in the DOT to determine if an occupation involved moving mechanical parts, because the DOT states whether any occupation therein involves moving mechanical parts. The DOT is unambiguous that the occupation of collator operator does not involve moving mechanical parts. Skinner's argument is therefore without factual support and so is unavailing.").

Finally, Claimant maintains she is unable to perform the job of marker, DICOT § 209.587-034, 1991 WL 671802, because it conflicts with her limitation to jobs that "do not involve a specific production rate pace, such as assembly line work or an hourly production quota. (Tr. 25). Such a job may conflict with Claimant's RFC. Compare *Leann M. N. Bisignano*, 2025 WL 2784870, at *5 (N.D. Okla. Sept. 30, 2025) (finding the

claimant failed to identify a conflict between "the RFC determination that [the claimant] 'cannot perform work requiring specific production rate, such as assembly line work or work that requires hourly quotas[,]'" and the job of marker.) *with Spears v. Saul*, 2020 WL 9421160, at *9 (W.D. Okla. May 7, 2020) (finding "it possible that there is a conflict between" an RFC that bars production-quota work and the job of marker but not deciding the issue because any such error would be harmless), *adopted*, 2021 WL 1700360 (W.D. Okla. Apr 29, 2021); *Sandra H. v. Comm'r of Soc. Sec.*, 2019 WL 289811, at *7 (E.D. Wa. Jan 22, 2019) (noting that jobs, such as marker, that require "'attaining precise set limits, tolerances, and standards' according to the DOT description."). However, the Court need not decide here whether such a conflict exists, in light of the aforementioned errors warranting reversal that call into question the ALJ's step five findings. And, assuming that there is conflict, any such error is harmless as the two remaining jobs exist in significant numbers. "[T]here is no bright-line answer to how many jobs are enough for a court to say, as a matter of law, that the number is significant, but the number appears to be somewhere between 100 . . . and 152,000, . . . to be sufficient so far for application of harmless error." *Evans v. Colvin*, 640 Fed. Appx. 731, 736 (10th Cir. 2016). In this case, the two remaining jobs meet this threshold. *See* DICOT § 208.685-010 (Collator Operator, 28,000 jobs available in the national economy); DICOT § 323.687-014 (Housekeeping Cleaner, 200,000 jobs available in the national economy).

Nonetheless, because the ALJ failed to properly evaluate the medical opinion evidence, Claimant's subjective statements, and comply with Soc. Sec. R. 96-8p, the decision of the Commissioner should be reversed and the case remanded to the ALJ for

further analysis. On remand, the ALJ is instructed to consider *all* of the evidence in the record, both physical and mental, in assessing Claimant's RFC. If such analysis results in any adjustment to Claimant's RFC, the ALJ should then re-determine what work, if any, Claimant can perform and ultimately whether he is disabled.

**Conclusion**

In summary, the Court finds that the correct legal standards were not applied by the ALJ, and the Commissioner's decision is therefore not supported by substantial evidence. The decision of the Commissioner is hereby REVERSED, and the case REMANDED for further proceedings.

**DATED** this 26th day of August, 2026.

**GERALD L. JACKSON**
**UNITED STATES MAGISTRATE JUDGE**